AO 91 (Rev. 08/09) Criminal Complaint

ORIGINAL

FILED
2011 AUG -5 PM 3: 21
STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

# UNITED STATES DISTRICT COURT
for the
Northern District of Indiana

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JAMES B. NELSON, and STEFANIE REDFERN | ) | Case No. 1:11MJ81 |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __08/04/11__ in the county of __Allen__ in the __Northern__ District of __Indiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 18 U.S.C. § 2 | did knowingly and intentionally possess with the intent to distribute: more than 10 grams of a mixture and substance containing a detectable amount of lysergic acid diethylamide (LSD), a Schedule I Controlled Substance, and 3,4-methylenedioxymethamphetamine, a Schedule I Controlled Substance or did aid and abet the same, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), 841(b)(1)(C) and 18 U.S.C. § 2. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Jonathan Goehring, DHS
Printed name and title

Sworn to before me and signed in my presence.

Date: __08/05/2011  3:15 PM__

_____
Judge's signature

City and state: __Fort Wayne, IN__

Theresa L. Springmann, U.S. District Court Judge
Printed name and title

## AFFIDAVIT

Comes now United States Department of Homeland Security, Special Agent Jonathan Goehring, first being duly sworn now deposes and says:

Your Affiant is assigned to the Indianapolis, Indiana Office of the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI) as a Special Agent. I have been a Special Agent with HSI since June, 2009. As a part of my HSI duties, I am responsible for investigating criminal drug trafficking activities which violate 21 U.S.C. § 841, et seq. I have personally participated in narcotics investigations. I have been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances and of the laundering and concealing of proceeds from drug trafficking in violation of 18 U.S.C. § 1956. I have received training in investigations involving transporting and distributing ecstasy and LSD. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to their methods of importing and distributing controlled substances, their use of telephones, and their use of numerical codes and code words to conduct their transactions. I am familiar with and have participated in all of the normal methods of investigation, including, but not limited to visual surveillance, the general questioning of witnesses, the use of informants, the use of pen registers, the execution of search warrants, and undercover operations. As part of my duties and responsibilities as a Special Agent with HSI, your Affiant has maintained regular contact with local, county, state and other federal law enforcement authorities involved in drug investigations, allowing your Affiant to be familiar with a variety of investigations of illegal drug trafficking organizations operating in the Northern District of Indiana. In preparing this affidavit, your Affiant has also relied upon the

drug training and experience of United States Postal Inspector Thomas Henderson who has extensive experience as he has been employed for over 12 years investigating the illegal shipment by drug traffickers of controlled substances through the mail.

Your affiant has been involved in an investigation of James B. Nelson (hereafter Nelson) and Stefanie Redfern (hereafter Redfern) since May, 2011 for suspected drug distribution via the internet and the United States mail.

Your affiant, learned in July 1, 2011, that Nelson had a local post office box in another name at a UPS store in Fort Wayne, where in the last two weeks, he had received packages from Spain and China. When Nelson came to pick up the package from China at the UPS store located on Dupont Road on July 21, 2011, he was driven to the location by Redfern in a Mazda 626 which parked in an unconnected, adjacent parking lot. Nelson went inside to retrieve the parcel, with your affiant conducting surveillance outside the business. According to the store employee, Nelson was careful not to touch the acceptance signature card with his fingertips. Your affiant observed Nelson walk to the UPS Store and exit with a package. Your affiant then observed Nelson return to the Mazda 626 and the Mazda 626 drive to the rear of the adjacent business where your affiant observed the suspect get out of the Mazda 626 and throw the packaging into a dumpster and get back into the passenger side of the Mazda. HSI Special Agent Robby Foster (SA Robby Foster) followed the Mazda 626 to the residence at XXXX North Anthony Boulevard. Shortly after the Mazda arrived at XXXX North Anthony Boulevard, HSI Special Agent Trent Elliott observed the suspect walk to the front of the residence while talking on a telephone and walking a dog. HSI agents continued to observe the Mazda at XXXX North Anthony Boulevard until surveillance was discontinued at approximately 10:45 p.m. that night.

2

A check of the records of the Bureau of Motor Vehicles revealed that the Mazda 626, white in color, 4 door vehicle, Indiana license plate 273BKB, VIN 1YVGF22C615245223, is registered to a James B. Nelson at an address which turns out to be a commercial business address for PAC mail here in Fort Wayne, Indiana. Your affiant learned that James B. Nelson has a post office box at this PAC mail location as well.

On July 22, 2011, your affiant interviewed the United States Postal Service carrier responsible for delivery of mail at XXXX North Anthony Boulevard. The carrier stated that James B. Nelson and Stefanie Redfern previously received mail at the second floor apartment at XXXX North Anthony Boulevard. The carrier stated that around the end of June 2011, James B. Nelson and Stefanie Redfern failed to collect their mail from their designated mailbox. After approximately three weeks of mail collected in the mailbox, the carrier stated she discontinued delivery for James B. Nelson and Stefanie Redfern. United States Postal Service records indicate no forwarding information was provided by either James B. Nelson or Stefanie Redfern.

Your affiant was informed that a package that had been sent from the Country Spain, was to be delivered to an alias associated to Nelson at the UPS Store on Dupont Road. On July 25, 2011, the package was exposed to a narcotics detection canine named Ralph. Ralph is employed by the Allen County Police Department (ACPD) and is handled by Patrol Officer Terry Furnish. The parcel was placed among other parcels where Ralph could examine all the parcels for the presence of narcotic odor. Upon such examination by Ralph, Patrol Officer Furnish stated that Ralph gave a positive indication to the parcel from Spain, with this positive indication being consistent with the dog's detection of the odor of a controlled substance. Ralph has been trained in the detection for the presence of the odor of the following controlled substances: marijuana, cocaine, heroin, crack cocaine, ecstasy (3, 4-methylenedioxymethamphetamine) and

methamphetamine, and was last certified by the International Association of Police Work Dogs in September 2010. Based upon all his training and experience with Ralph, Officer Furnish believed that Ralph was reliable regarding his detection of the presence of narcotic odors. The parcel was placed back with the UPS store for the suspect to pick up.

On July 26, 2011, your affiant observed the Mazda 626 at XXXX North Anthony Boulevard at 8:45 a.m. Later that day, your affiant observed the Mazda 626 leave XXXX North Anthony Boulevard with the suspect in the passenger seat. Your affiant followed the Mazda 626 to Scott's Supermarket and observed Nelson and Redfern loading grocery bags into the Mazda. Your affiant followed the Mazda 626 back to XXXX North Anthony Boulevard and observed the two carry the grocery bags inside the second floor apartment.

On July 28, 2011, while conducting surveillance, your affiant observed Nelson arrive at the UPS store on Dupont Road to pick up the parcel that had been mailed from Spain, and your affiant continued to conduct surveillance outside the business. Nelson was again driven to the location in the Mazda by Redfern, and the vehicle was again parked in an unconnected adjacent lot. Surveillance observed Nelson enter the store. According to the store employee, Nelson was careful not to touch the acceptance signature card with his fingertips. Once Nelson had obtained the parcel, he discarded the packaging in a trash can outside the UPS store. Nelson was followed as he was driven in the Mazda by Redfern and was observed at a local strip mall where he was seen exiting the vehicle in the parking lot. Your affiant observed Nelson as he approached a postal mail receptacle with his back pack in hand and saw him drop envelopes or packages into the mailbox. The mail receptacle was located in the Kohl's parking lot at the corner of Coliseum and Clinton in the Northcrest Shopping Center, its box number is 46800500049.

4

Your affiant secured the postal box and immediately contacted United States Postal Inspector Andrew Gottfried, who took possession of four priority mail packages from the mail receptacle in question which is located at the Kohls in Northcrest shopping center. The four priority mail packages were all USPS priority mail flat rate mailing envelopes that were on top of the mail deposited in receptacle number 46800500049. Inspector Gottfried then secured the packages at the Post Office and his investigation was continued by United States Postal Service (USPS) Inspector Thomas Henderson (Inspector Henderson) who is authorized to conduct investigations on behalf of the United States Postal Inspection Service, and has been so employed for over 12 years. Inspector Henderson has training and experience regarding the illegal shipment by drug traffickers of controlled substances through the mail. According to Inspector Henderson, priority mail parcel (Priority Mail Parcel ONE) with Delivery Confirmation tracking number 0310 0480 0001 1509 1524 had been addressed to a commercial business in Ham Lake, Minnesota. The purported sender was located in Fort Wayne, Indiana. The parcel's measurements were 12 ½ inches by 9 ½ inches, and the approximate weight was 4.1 ounces, and a USPS flat rate mailing envelope was used. A check of the return address indicates that it was fictitious. Inspector Henderson is aware that individuals who traffic in controlled substances often use fictitious names and/or addresses to conceal their true identity.

Inspector Henderson advised that priority mail parcel (Priority Mail Parcel TWO) with Delivery Confirmation tracking number 0310 0480 0001 1509 1555 had been addressed to an individual in Cary, North Carolina. The purported sender was an individual in Fort Wayne, Indiana. The parcel's measurements were 12 ½ inches by 9 ½ inches, and the approximate weight was 4.3 ounces, and a USPS flat rate mailing envelope was used.

5

United States Postal Service employees were able to identify seven other priority/express mail parcels that had been dropped off at various other mail receptacles in the Fort Wayne, Indiana area. One of these parcels had the same sender as parcel TWO. Inspector Henderson advised that priority mail parcel (Priority Mail Parcel THREE) with Delivery Confirmation tracking number 0310 0480 0001 1509 1586 had been addressed to an individual in Katy, Texas. The purported sender was an individual whose named appeared on Parcel TWO from Fort Wayne, Indiana. The parcel's measurements were 12 ½ inches by 9 ½ inches, and the approximate weight was 4.4 ounces, and a USPS flat rate mailing envelope was used. A check of the return address revealed it was connected to apartment building and that the individual whose name was used does reside in that apartment building. A telephone call was placed to the individual whose name was contained as the sender of the package, and he/she advised that he/she did not mail any parcels nor did he/she give anyone permission to send something on his/her behalf.

On July 28, 2011, Priority Mail Parcels ONE and TWO were exposed to a narcotics detection canine named Bo who is employed by the Allen County Police Department (ACPD) and is handled by Patrol Officer Brian Heine. On July 29, 2011, Priority Mail Parcel THREE was exposed to a narcotics detection canine named Justice who is employed by the Allen County Police Department (ACPD) and is handled by Patrol Officer Toby Rhymer. All the parcels were placed among other parcels where the canines could examine all the parcels for the presence of narcotic odor. Upon such examination by Bo, Patrol Officer Heine stated that Bo gave a positive indication to Priority Mail Parcels ONE and TWO, with this positive indication being consistent with the dog's detection of the odor of a controlled substance. Upon examination by Justice, Patrol Officer Patrol Officer Rhymer stated that Justice gave a positive

6

indication to Priority Mail Parcel THREE, with this positive indication being consistent with the dog's detection of the odor of a controlled substance. Both canines have been trained in the detection for the presence of the odor of the following controlled substances: marijuana, cocaine, heroin, crack cocaine, ecstasy (3, 4-methylenedioxymethamphetamine) and methamphetamine. Bo was initially certified by the International Association of Police Work Dogs (IAPWD) on July 1, 2011, in the detection of the aforementioned odors, and Justice was last certified by IAPWD in May of 2011. Patrol Officer Heine has been employed by the ACPD for over five years, and assigned as a Narcotic Detector Canine handler with his partner Bo since July 1, 2011. Officer Heine stated that this positive alert was Bo's first positive alert in service after being certified. Patrol Officer Rhymer has been employed by the ACPD for over five years, and has been assigned as a Narcotic Detector Canine handler with his partner Justice since July 2010. During his service and over the course of over hundreds of sniffs, Justice has located controlled substances on numerous occasions. Both handlers believed that based upon their training and experience with their canines, their respective canines were reliable regarding their detection of the presence of narcotic odors.

On August 2, 2011, United States Magistrate Judge Roger B. Cosbey issued a search warrant for Priority Mail Parcels ONE, TWO and THREE identified. A search of the three parcels resulted in the following:

> Priority Mail Parcel ONE contained a 2.5 inch by 2.5 inch white paper-like square, heat sealed in plastic, secreted inside an Allen County Solid Waste Management District booklet. Laboratory analysis is pending, however, your affiant, based on his training, experience and knowledge of the facts of this investigation, believes this item to contain LSD, a schedule I Narcotic Controlled Substance.
>
> Priority Mail Parcel TWO contained a 3.7 ml Sweet Breath spray bottle containing a green liquid, heat sealed in plastic, secreted inside an Allen County

7

Solid Waste Management District booklet. Laboratory analysis is pending, however, your affiant, based on his training, experience and knowledge of the facts of this investigation, believes this item to contain LSD, a schedule I Narcotic Controlled Substance.

Priority Mail Parcel THREE contained a 3.7 ml Sweet Breath spray bottle containing a green liquid heat sealed in plastic secreted inside an Allen County Solid Waste Management District booklet. Laboratory analysis is pending, however, your affiant, based on his training, experience and knowledge of the facts of this investigation, believes this item to contain LSD, a schedule I Narcotic Controlled Substance. Also secreted inside the Allen County Solid Waste Management District booklet was a small ziplock baggie with red hearts imprinted on it, approximately 1.5 inches by 1.5 inches, containing a fine crystalline substance. Laboratory analysis is pending, however, your affiant, based on his training, experience and knowledge of the facts of this investigation, believes this item to contain ketamine, a schedule III Narcotic Controlled Substance.

Approximately thirty minutes after your affiant observed James B. Nelson mail Priority Mail Parcels ONE, TWO and THREE, on July 28, 2011, HSI Special Agent Michael Johnson observed the Mazda 626 and James B. Nelson at XXXX North Anthony Boulevard. A historical review of Global Positioning System (GPS) tracking device data for a GPS device installed on the Mazda 626 registered to and utilized by James B. Nelson indicates the vehicle departed XXXX North Anthony Boulevard, Fort Wayne, Indiana approximately fifty minutes prior to being observed by your affiant picking up the Spain package at the UPS Store on July 28, 2011.

On August 4, 2011, your affiant learned from a check of the utilities at XXXX North Anthony Boulevard that the second floor apartment's electric utilities are under the name of James Nelson. On August 4, 2011, your affiant learned from the landlord that the upstairs apartment at XXXX North Anthony Boulevard is leased to Nelson and Redfern.

On August 4, 2011, United States Magistrate Judge Roger B. Cosbey issued a search warrant for the upstairs apartment located at XXXX North Anthony Boulevard, Allen County, Fort Wayne, Indiana, the detached garage and the Mazda 626, 4-door vehicle. On that same

8

date, your affiant, along with law enforcement officers from the United States Postal Inspection Service, the Indiana State Police, and Drug Enforcement Administration assisted in the execution of the warrant. Nelson and Redfern were present at the time the warrant was executed.

The execution of the federal search warrant on the upstairs apartment, the garage and vehicle resulted in the recovery of the following:

Inside the apartment in what would be described as an office, there was a hydraulic pill press. In the closet of that office/room there was a dresser, the dimensions of which were approximately 3 feet tall and 5 feet wide, and it contained a number of draws of different sizes. Inside the draws of the dresser were various quantities of white and off white powdery substances in silver or clear bags, various sized pills in multiple colors, some stamped with symbols, some not, which included 1,811 blue pills, as well as United States currency. In the dresser also found was a clear plastic bag with several large chunks of a brown crystalline substance, approximately 1 pound. Also located in the office was a printer, various return address mailing labels with names and addresses already printed. Located in the freezer in the kitchen of the apartment were approximately 35 Sweet breath spray bottles each weighing approximately 3.7 ml and containing a green liquid, along with 4 white paper like square sheets that were approximately 11 inch by 6 1/4 inches, as well as powdered substances. In the bedroom there was an HP laptop computer and Lacie hardrive, a cruzer one gigabyte thumb drive, and two bags of United States currency. On the kitchen table, there was an HP Pavillion DV6000 laptop. In the vehicle were two laptops, an Apple Mac airbook, PC, and an Apple Mac book pro, PC.

Redfern indicated to an Indiana State Trooper that the Sweet Breath bottles from the freezer each contained 100 hits of LSD and would sell for $500 a bottle while the white square

sheets in the freezer were also LSD and sold for $500 a sheet. Redfern explained that she never transported the controlled substances except to mail them and had been mailing them over the last 4 years. Redfern indicated that the brown crystallized chunks were in her opinion, 100% ecstacy, "the good stuff". Redfern indicated that Nelson had already been involved in mailing drugs when she met him years ago in another state.

Many of the pills and powders have yet to be identified. However, many of the pills, and some of the powders and substances were field tested. The total weight of the powdered substance that was field tested to date has an approximate weight of 13.4 pounds. Not all the pills were tested, but 1,811 of the blue pills were field tested. Based upon my involvement in investigations relating to ecstasy and LSD as well as my training, the appearance of the substance, the field test and knowledge of the facts of this investigation, your affiant believes fine crystalline substance to be ketamine, a schedule III Narcotic Controlled Substance, and the 1,811 blue pills, the clear plastic bag with several large chunks of a brown crystalline substance, approximately 1 pound, and the 13.4 pounds of powder to be 3, 4-methylenedioxymethamphetamine, a schedule I Narcotic Controlled Substance.

Based upon my involvement in investigations relating to ecstasy and LSD as well as my training, the appearance of the substance, the field test and knowledge of the facts of this investigation, your affiant believes the green liquid in the 35 Sweet Breath bottles contains LSD a schedule I Narcotic Controlled Substance, the four 11 inch by 6 1/4 inch white square blotter papers also contain a mixture and substance containing a detectable amount of LSD, a schedule I Narcotic Controlled Substance.

Based on the facts of this case, as well as my training and experience, your affiant believes that the 35 Sweet breath spray bottles (each containing 3.7 ml) and the 4 white sheets,

10

which all contain a mixture and substance containing a detectable amount of LSD, are amounts consistent with distribution and not personal consumption. Further, the amounts of powder, brown crystal chunk, and the blue pills which field tested positive for 3, 4-methylenedioxymethamphetamine are also amounts consistent with distribution and not personal consumption.

Your affiant has not included each and every fact known or provided by members of the United States Postal Inspection Service, the Indiana State Police, or the Drug Enforcement Administration concerning the individual events described herein. The information contained in this affidavit is based on information provided to your affiant by other law enforcement officers.

WHEREFORE, your affiant believes that based upon the information contained herein, there is probable cause to believe that the defendants, James B. Nelson and Stefanie Redfern did knowingly and intentionally possess with the intent to distribute: more than 10 grams of a mixture and substance containing a detectable amount of lysergic acid diethylamide (LSD), a Schedule I Controlled Substance; and 3, 4-methylenedioxymethamphetamine, a Schedule I Controlled Substance or did aid and abet the same, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), 841(b)(1)(C) and 18 U.S.C. § 2.

Further your affiant sayeth naught.

_____
Jonathan C. Goehring
Special Agent
United States Homeland Security Investigations

Subscribed and sworn to me before me this 5th day of August 2011.

_____   S/THERESA L. SPRINGMANN
Theresa L. Springmann
United States District Court Judge

12